A00A1074. LA COSECHA, INC. v. HALL.
(540 SE2d 659)

ANDREWS, Presiding Judge.

La Cosecha, Inc. d/b/a La Parilla, a Mexican restaurant, appeals[1] the denial of its motion for summary judgment in Julie Hall's wrong-

---

[1] The trial court granted a certificate of immediate review, and this Court granted the application to appeal.

ful death action premised on OCGA § 51-1-40 (b) following the death of her husband Daniel Hall in a single vehicle accident.

In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment. *Birnbrey, Minsk & Minsk, LLC v. Yirga*, 244 Ga. App. 726 (535 SE2d 792) (2000).

So viewed, the evidence was that Hall, Tatum, and Tarnecki worked together and also socialized frequently. On Sunday, January 4, 1998, Hall called Tatum around 9:00 a.m. and asked if he could come to Tatum's residence. He arrived within 30 minutes. Hall had a six-pack of beer with him and was already drinking beer and smoking marijuana. Around 11:00 a.m., Hall and Tatum went to Smyrna to return a rototiller and went by "Margaret and Pete's" house around 1:30 p.m. Margaret and Pete were drinking beer; however, Tatum did not remember if he drank beer at Margaret and Pete's. Hall and Tatum then went to Rogers' house where Hall looked at an engine hoist.

Tarnecki was getting gas around 3:00 p.m. when Tatum and Hall drove by. Prior to this time, Tarnecki had nothing alcoholic to drink. He then joined Tatum and Hall at Tatum's house where Tatum drank three beers. They decided to go to La Parilla in Marietta, and Tatum drove them to the restaurant in his Ford Expedition around 6:00 p.m. They sat at the bar and were waited on by the bartender. The three ate chips and salsa, and Tatum ordered three tacos. Each man ate one. Tatum drank a monster beer, a frozen margarita, and a shot of tequila. Tarnecki and Hall drank similar amounts of alcohol. Tatum had his car keys in his pocket, and there was no discussion in the presence of the bartender among the men about their having driven to the restaurant or that they would be driving when they left.

Tarnecki had previously observed others when they were intoxicated, which was evidenced by bloodshot eyes, instability, slurred speech, and loud talking. Further, Tarnecki had been with Tatum when he was intoxicated, manifested by Tatum's loud talking and slurred speech. When they left La Parilla, Tatum's behavior was normal and he did not appear intoxicated, according to Tarnecki. Tarnecki did not recall anyone questioning how much they had to drink or refusing them service at La Parilla, and Tatum deposed that they had no difficulty getting off their bar stools and leaving. Tarnecki did not consider himself or Hall to be intoxicated when they left La Parilla.

From La Parilla, Tatum drove them to Norm's, a bar with pool tables. During the approximately five-minute drive to Norm's, Tarnecki observed no signs of intoxication in Tatum or any swerving or speeding. They arrived at Norm's about 8:00 p.m. and stayed there

drinking beer and Crown Royal and shooting pool for two or three hours.

After leaving Norm's, Tatum lost control of the Expedition. Hall died in the accident, and Tarnecki was severely injured.

Velasquez, the owner/manager of La Parilla, which has four locations, deposed that all employees are instructed from a training manual regarding alcohol service and that their policy is not to serve intoxicated customers. The manual is kept in each restaurant's office and is available to employees upon request. At the Marietta location, some customers walk to the restaurant instead of driving to it. On Sunday evenings, Velasquez deposed that a lot of people walk to the restaurant from the Marietta square.

OCGA § 51-1-40 (b), an exception to the social host liability statute (OCGA § 51-1-40 (a)), requires that, in order to hold a seller of alcoholic beverages to a person of lawful drinking age liable for injuries resulting from intoxication, the seller must sell, furnish, or serve "alcoholic beverages to a person who is in a state of *noticeable intoxication*, knowing that such person will *soon be driving a motor vehicle*," if the sale, furnishing, or serving of that alcohol is the *proximate cause* of such injury or damage. (Emphasis supplied.) *Birnbrey, Minsk &c.*, supra at 727-728 (1).

In denying the motion for summary judgment, the trial court focused on inconsistencies found in the depositions of Tatum and Tarnecki and on the fact that "[t]here is no proof of how much Defendant Tatum had to drink prior to arriving at La Parilla or what his physical appearance was upon leaving."

Independently reviewing these two depositions, however, we do not find material contradictions which would preclude summary judgment. See *Chelena v. Ga. Fed. Sav. &c. Assn.*, 256 Ga. 336, 337 (349 SE2d 180) (1986). It is the duty of each party at summary judgment to present their case in full or risk judgment going against them. *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 681 (2) (498 SE2d 748) (1998).

> Where direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.

(Citations and punctuation omitted.) *Michelin Tire Corp. v. Irving*, 185 Ga. App. 783, 784 (1) (366 SE2d 156) (1988). See also *Kappa*

*Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 892 (1) (473 SE2d 213) (1996).

La Parilla relied upon Tarnecki's statement that Tatum did not appear intoxicated while at the restaurant or when they left, on Tatum's statement that he had no trouble leaving the restaurant, and on La Parilla's policy to not serve intoxicated customers. In response, the only evidence presented by Hall was an affidavit of Dr. Robert Goldberg, a forensic pathologist. His conclusion that Tatum's blood alcohol content would have been 0.29 before being served the final shot of tequila and that he would have exhibited clinical symptoms of intoxication is premised on three assumptions: that Tatum smoked marijuana at approximately 9:30 a.m.; that between 1:30 p.m. and 6:00 p.m., Tatum consumed at least five 12-ounce beers, a 20-ounce monster beer, a three-shot margarita, and thereafter two shots of tequila; and that he weighed approximately 185 pounds on January 4, 1998.

Only the last assumption is supported by evidence of record. Regarding Tatum's marijuana use, he was asked if he had smoked marijuana that morning and replied he did not remember. Asked if he "could have," he said he could have. This amounts, at best, to a mere possibility. " 'Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment. (Cits.)' *Brown v. Amerson*, 220 Ga. App. 318, 320 (469 SE2d 723) (1996)." *Tuggle v. Helms*, 231 Ga. App. 899, 902 (2) (499 SE2d 365) (1998).

Additionally, no evidence is contained in the record regarding how many shots were contained in La Parilla's margaritas or that Tatum consumed a total of ten alcoholic drinks that day.

Therefore, on the record before us, we conclude that Hall, following La Parilla's production of direct evidence that Tatum did not appear intoxicated at its establishment, failed to come forward with proof that there was a triable issue as to this essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991); *Birnbrey, Minsk &c.*, supra at 727; *Kappa Sigma*, supra at 891. La Parilla was entitled to summary judgment.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED OCTOBER 20, 2000.

*Hall, Booth, Smith & Slover, John E. Hall, Jr., Heather C. McGrotty, Jason P. King*, for appellant.
*Douglas J. Davis*, for appellee.