**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1360, A12A1361. ISBELL et al. v. CREDIT NATION
      LENDING SERVICE, LLC et al.; and vice versa.

MILLER, Presiding Judge.

Jonathan and Mary Katheryne Isbell sued Credit Nation Lending Service, LLC

("CNLS") and Credit Nation Auto Sales, LLC, d/b/a Synergy Motor Company, d/b/a

Kellee Kars, Inc., d/b/a Kellee Kars Isuzu, d/b/a KKL Services ("CNAS")

(collectively, "Credit Nation"), raising claims of fraud, breach of oral contract, and

violations of the Georgia Fair Business Practices Act ("FBPA") (OCGA § 10-1-390

et seq.) and the federal Truth in Lending Act ("TILA") (15 USC § 1601 et seq.) in

relation to the Isbells' purchase and financing of a used vehicle.[1] Credit Nation filed

a motion for summary judgment, and the Isbells responded with a cross-motion for

---

[1] The Isbells also asserted that Credit Nation violated the Georgia Motor
Vehicle Finance Act, but the Isbells later withdrew this claim.

partial summary judgment. Credit Nation moved to strike an affidavit and 21 exhibits attached to the Isbells' motion for summary judgment, as well as a supplemental affidavit. The trial court granted Credit Nation's motion for summary judgment and denied the Isbells' partial summary judgment motion. The trial court also denied Credit Nation's motions to strike. These cross-appeals then ensued.

In Case No. A12A1360, the Isbells contend that the trial court failed to consider their deposition exhibit and erred in finding that they did not present evidence to support their claims. For the reasons stated below, we affirm in part and reverse in part the trial court's judgment in Case No. A12A1360.

In Case No. A12A1361, Credit Nation contends that the trial court erred in denying its motions to strike because the subject exhibits and documents were not authenticated or contained hearsay. For the reasons that follow, we affirm the trial court's rulings in Case No. A12A1361.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

2

So viewed, the record shows that on October 20, 2008, the Isbells called Credit Nation[2] in response to an online advertisement about a 2002 Ford Explorer. Mr. Isbell explained to a Credit Nation salesperson that he was interested in the advertised vehicle, and that he wanted a vehicle that had not been in an accident, did not have any body damage, and did not require any repair. The salesperson assured Mr. Isbell that the Ford Explorer met Mr. Isbell's requirements. When the Isbells visited Credit Nation later that day, the salesperson had the Ford Explorer parked in front of the dealership ready for the Isbells to test drive. During the ensuing test drive, Mr. Isbell stopped at a gas station to inspect the vehicle for body work. Upon returning to the Credit Nation lot, Mr. Isbell lifted the hood and examined the engine. During his inspections, Mr. Isbell did not find any defects or damage. Mr. Isbell then asked the salesperson about the vehicle's condition, and the salesperson responded that there was nothing wrong with the vehicle.

The Isbells agreed to buy the vehicle, paying $3,500 in cash as a down payment and using Credit Nation's financing affiliate, CNLS, to finance the remainder of the

[2] Credit Nation came into existence in August 2008 and purchased the assets of Kellee Kars, Inc., which was in bankruptcy proceedings. After the sale, Credit Nation changed its operating name to Synergy Motor Company d/b/a Kellee Kars. Synergy Motor Company later converted its registered name to Credit Nation Auto Sales.

vehicle's cost. The Isbells negotiated a semi-monthly payment plan, which required them to make 24 payments per year and 78 total payments over the total 39-month financing period. The Credit Nation sales manager inputed these figures into a software program, which generated the TILA disclosures. The TILA disclosures were verified by a finance manager and disclosed to the Isbells.

During the negotiations, Mr. Isbell requested a Carfax report on the Ford Explorer so that he could verify that the vehicle had not been involved in an accident. Mr. Isbell did not receive the requested report before signing the purchase agreement. The Isbells purchased the vehicle "as is," and authorized Credit Nation to withdraw payments by charging Mr. Isbell's debit card.

Upon returning home with the Ford Explorer, Mr. Isbell obtained a vehicle history report and discovered that the vehicle had suffered frame damage. The next morning, Mr. Isbell returned to Credit Nation to complain about the vehicle's damage. Credit Nation's general manager told Mr. Isbell that his down payment had already been deposited, and that the contract could not be rescinded. Mr. Isbell left with the Ford Explorer that day, but subsequently returned several more times to demand that Credit Nation take the vehicle back. Within two weeks of the Isbells' purchase, Credit Nation agreed to accept the Ford Explorer and to attempt to find the

4

Isbells a replacement vehicle that was similar to the one they purchased. Credit Nation provided the Isbells with loaner vehicles while searching for a replacement vehicle. During the subsequent search, Credit Nation continued to charge payments against Mr. Isbell's debit card, although he had previously asked the dealership to cease making such charges.

Credit Nation attempted to find a suitable vehicle for the Isbells and, after failing do to so, demanded that the Isbells return the loaner vehicle and pick up the Ford Explorer. The Isbells refused to reclaim the Ford Explorer they purchased. Credit Nation subsequently repossessed the loaner vehicle.

The Isbells later sued Credit Nation for fraud and violation of the FBPA on the ground that Credit Nation falsely represented the vehicle's condition as having no frame or transmission damage. The Isbells also sued for breach of contract, alleging that Credit Nation broke its oral promise to find a suitable replacement vehicle for the Isbells. The Isbells also asserted that Credit Nation violated the FBPA by misrepresenting the business entities involved in the transaction, and that the dealership violated TILA by failing to disclose the payment schedule.[3]

---

[3] The Isbells also alleged other TILA violations – failure to accurately disclose the annual percentage rage, the finance charge, and the total payment amount – and alleged other FBPA violations based on these predicate TILA violations. However,

Credit Nation moved for summary judgment, claiming that the Isbells' fraud claim failed as a matter of law because they presented no evidence that the dealership knew the vehicle was damaged or defective, and that the Isbells could not show justifiable reliance on any alleged misrepresentation. Credit Nation also argued that the Isbells' breach of contract claim failed because any promise to find a replacement vehicle was unenforceable for lack of material terms and for violating the statute of frauds. In addition, Credit Nation argued that the Isbells' FBPA claim based on misrepresentation of the vehicle's condition failed for the same reasons the fraud claim failed. Credit Nation also asserted that the Isbells' FBPA claim based on the use of multiple business entities failed since Credit Nation was permitted to use multiple trade names and there was no evidence that the Isbells were actually confused by such use. Credit Nation also contended that its TILA disclosures were accurate, and that to the extent they were not, it was entitled to a bona fide error defense since any errors were unintentional.

---

the Isbells do not challenge the trial court's grant of summary judgment on those claims, and therefore have abandoned any challenge to that ruling. Court of Appeals Rule 25(a)(3) and (c) (2); *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, 804, n. 2 (689 SE2d 843) (2009).

The Isbells filed a cross-motion for partial summary judgment, and Credit Nation moved to strike documents attached to the Isbells' motion and a supplemental affidavit. Following a hearing, the trial court issued an order granting summary judgment to Credit Nation, denying the Isbells' cross-motion for partial summary judgment, and denying Credit Nation's motions to strike.

*Case No. A12A1360*

1. The Isbells contend that the trial court erred in granting Credit Nation's motion for summary judgment because it ignored Mr. Isbell's deposition exhibits that were not filed with the clerk of the court. Their claim lacks merit.

> Under OCGA § 9-11-56, once a movant supports his motion for summary judgment, the opponent cannot rest upon the mere allegations of his complaint, but must come forth with affidavits or other evidence setting forth specific facts showing that a genuine issue exists for trial. And the burden of timely filing depositions and other discovery material with the trial court lies with the party which intends to rely upon it.

(Citations and punctuation omitted.) *Parker v. Silviano*, 284 Ga. App. 278, 281 (2) (643 SE2d 819) (2007).

Here, Credit Nation filed Mr. Isbell's deposition and referred to his deposition testimony in support of their motion for summary judgment. Mr. Isbell's deposition referred to certain exhibits, which were not attached to the deposition filed by Credit

7

Nation. Since the Isbells were relying on the subject deposition exhibits, it was their burden to ensure that the record was complete. *Parker*, supra, 284 Ga. App. at 281 (2). Nevertheless, the record shows that the subject deposition exhibits were attached to the Isbells' statement of undisputed material facts. Since the trial court stated that it considered the entire record upon ruling on the motions for summary judgment, and there is no evidence to the contrary, the Isbells have failed to demonstrate that they were harmed by Credit Nation's failure to attach the deposition exhibits with the deposition transcript. As such, the Isbells' claim affords no basis for reversal. See *Hooks v. Humphries*, 303 Ga. App. 264, 269 (4) (692 SE2d 845) (2010) ("[I]t is axiomatic that harm as well as error must be shown to authorize a reversal by this court.") (citation and punctuation omitted).

2. The Isbells contend that the trial court erred in granting summary judgment to Credit Nation on their fraud and rescission claim for failure to present admissible evidence that Credit Nation knew that the Ford Explorer had transmission and frame damage. We agree that the Isbells presented evidence from which a jury could infer that Credit Nation knew about the vehicle's frame damage, but disagree that they presented evidence that Credit Nation knew that the vehicle had transmission issues.

8

(a) "In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." (Citation omitted.) *Ekeledo v. Amporful*, 281 Ga. 817, 819 (1) (642 SE2d 20) (2007)."The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Punctuation and footnote omitted.) *Serchion v. Capstone Partners, Inc.*, 298 Ga. App. 73, 76-77 (2) (679 SE2d 40) (2009).

(i) Here, there was record evidence from which a jury could infer that Credit Nation knew about the vehicle's frame damage. Notably, in response to the Isbells' interrogatories, Credit Nation admitted that its agent bought the Ford Explorer at an auction performed by Manheim Auction Company ("Manheim"). Manheim's Controller confirmed that Credit Nation had requested and paid for a post-sale inspection. Manheim's Controller averred and submitted business records showing that the Ford Explorer was announced at auction as having frame and body damage, and that the vehicle's left rear rail was bent.

The trial court ruled that the documents supplied by Manheim's Controller were inadmissible because there was no testimony from Manheim's inspector.

9

However, the documents were admissible under the business records exception to the hearsay rule.

> OCGA § 24-3-14 prescribes the statutory standard for the admission in evidence of records made in the regular course of business. This Code section is to be liberally interpreted and applied. OCGA § 24-3-14 (d). Before a writing or record is admissible, under OCGA § 24-3-14 (b), a foundation must be laid through the testimony of a witness who is familiar with the method of keeping the records and who can testify thereto and to facts which show that the entry was made in the regular course of a business at the time of the event or within a reasonable time thereafter. A witness identifying business records under OCGA § 24-3-14 does not have to have personal knowledge of the correctness of the records *or have made the entry himself.*

(Citations and punctuation omitted; emphasis supplied.) *Tharp v. Vesta Holdings I, LLC*, 276 Ga. App. 901, 907 (3) (625 SE2d 46) (2005).

Manheim's Controller averred that he had personal knowledge of the company's method of maintaining its business records; the company's records were kept in the ordinary course of business; and record entries were made at or near the time of the auction and post-sale inspection.[4] Manheim's Controller laid a sufficient

---

[4] Credit Nation argues that the documents were inadmissible because they were not created contemporaneously with the vehicle inspection. We disagree. The documents show that Manheim received the Ford Explorer on July 30, 2008, and an inspection was performed the next day. The vehicle condition report was dated August 13, 2008. A computer printout showing that Credit Nation, through Kellee Kars, ordered the post-sale inspection is dated August 27, 2008. Contrary to Credit Nation's contention, it is not necessary that the reports be completed at the same time

foundation for admission of the inspection reports, and the trial court erred when it found that the inspection reports identified by Manheim's Controller were inadmissible hearsay on the basis that he did not make the entries himself. See *Walter R. Thomas Assoc. v. Media Dynamite*, 284 Ga. App. 413, 416 (1) (a) (643 SE2d 883) (2007) (invoices sent to company can be considered the company's business record if kept in the ordinary course of business, notwithstanding absence of testimony from a representative who prepared the invoice, since the testimony of the company's president was sufficient to lay a foundation).

Based on the Manheim Controller's affidavit and attached business records, there is record evidence establishing that Credit Nation received a post-sale inspection report that revealed frame damage. Mr. Isbell testified that he informed the Credit Nation salesperson that he did not want a vehicle that had been in any accidents or had any damage. The salesperson confirmed that the Ford Explorer met Mr. Isbell's requirements, and that nothing was wrong with the subject vehicle. While the record shows that some of the body damage had been fixed, there is no evidence

---

as the inspection, and it has failed to show that the documents were not prepared within a reasonable time of the post-sale inspection. See OCGA § 24-3-14 (b) (business record must be made at the time of the event or within a reasonable time thereafter).

11

that the vehicle's left-rail had been repaired. In light of these facts, there is a factual dispute as to whether the salesperson's representation about the history and condition of the vehicle was false, and a jury may infer knowledge of the falsity in light of the fact that Credit Nation received the post-sale inspection report. See *Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330, 335 (2) (618 SE2d 87) (2005) (salesman's representation that vehicle had not been wrecked was false, and knowledge of falsity could be inferred based on fact that vehicle was repaired by dealership where salesman worked).

> Sufficient circumstances were shown to create a jury issue as to the salesman's intentional deception, a deception which would be attributed to his employer as a matter of law. Although fraud may not be presumed, slight circumstances may be sufficient to carry conviction to its existence.

(Punctuation and footnotes omitted.) Id. at 336 (2). Therefore, the trial court erred when it granted summary judgment to Credit Nation since the evidence shows that Credit Nation learned through the auction that the vehicle's frame was damaged.

(ii) The Isbells, however, failed to present evidence showing that Credit Nation knew of the Ford Explorer's transmission problems. Mr. Isbell deposed that when driving in reverse, the car sounded "like the transmission fell out." While the Isbells assumed that the dealership must have known about the problematic transmission, as

12

they "purposefully orchestrated" the test drive so that the Isbells would not need to drive the vehicle in reverse, their testimony was based upon mere speculation. "Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." (Citations and punctuation omitted.) *La Cosecha, Inc. v. Hall*, 246 Ga. App. 441, 444 (540 SE2d 659) (2000). Notably, Credit Nation supplied an affidavit from its sales manager stating he was familiar with the Ford Explorer purchased by the Isbells, and to his knowledge, the vehicle had no transmission problems. Therefore, the Isbells claim of fraud premised on alleged transmission misrepresentations failed.

(b) Credit Nation contends that we should nevertheless affirm the trial court's ruling since the Isbells did not justifiably rely on the false representation regarding the vehicle's condition. We agree.

Although the trial court's reason for granting summary judgment may be erroneous, we may still affirm the trial court's judgment if it is right for any reason. See *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 45 (4) (586 SE2d 235) (2003) (a judgment of a lower court may be affirmed so long as it is right for any reason); *City of Gainesville v. Dodd*, 275 Ga. 834, 835, 838-839 (573 SE2d 369) (2002)

13

(appellate courts may exercise discretion as to when to follow the "right for any reason" rule and consider grounds not addressed by the trial court). Since the factual record is set, we are able to apply the facts to the law in the same manner as the trial court in the furtherance of judicial economy. See *City of Gainesville*, supra, 275 Ga. at 838 ("The de novo review standard advances judicial economy by recognizing that, in summary judgment cases, the factual record is set and the appellate courts can, as well as the trial courts, apply those facts to the law.").

> In order to prove the fourth element of justifiable reliance, a party must show that he exercised his duty of due diligence. Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence. While justifiable reliance, more often than not, is a jury issue, summary judgment may be appropriate if the *means of ascertaining the relevant facts are equally available to all parties.*

(Citations and punctuation omitted; emphasis supplied.) *Martin v. Centre Point Investments, Inc.*, 310 Ga. App. 253, 257 (712 SE2d 638) (2011).

Here, although Mr. Isbell was aware that he could obtain a Carfax report to verify that the vehicle did not have any body damage, he decided to proceed with the purchase without first obtaining the report. While Mr. Isbell testified that he was led

14

to believe that Credit Nation would resolve any issues that surfaced based on Mr. Isbell's receipt of a vehicle history report, he conceded that Credit Nation did not specifically make such a promise. Moreover, the Isbells were specifically warned that the vehicle may have a bent frame, and Credit Nation offered the Isbells the opportunity to inspect the vehicle with their own mechanic. Since the Isbells purchased the vehicle "as is," without first obtaining a vehicle history report or having the vehicle inspected by a mechanic, their "blind reliance on the salesman's representations when the means of knowledge were at hand shows an unjustified lack of due diligence." (Citation and punctuation omitted.) *Empire Distributors, Inc. v. Hub Motors Co.*, 240 Ga. App. 568, 569 (1) (524 SE2d 264) (1999); see also *Lehman v. Keller*, 297 Ga. App. 371, 373 (1) (677 SE2d 415) (2009) (buyers failed to exercise due diligence when they declined to exercise right to inspect property which would have revealed damage allegedly concealed by sellers). Moreover, "[i]n light of [the Isbells'] failure to use due diligence as set forth above, rescission of the contract for fraud in the inducement was not authorized." *Simmons v. Pilkenton*, 230 Ga. App. 900, 902 (2) (497 SE2d 613) (1998). Consequently, the trial correctly granted summary judgment on the issue of fraud and rescission.

3. The Isbells contend that the trial court erred in erred in granting summary judgment to Credit Nation on their claim that Credit Nation breached an oral contract claim.

(a) The Isbells' assert that the trial court erred when it found that Credit Nation's oral promise to find a similar vehicle for them after accepting the returned Ford Explorer was not supported by consideration. We agree.

"It is axiomatic that a contract without consideration is invalid." (Footnote omitted.) *Thomas Mote Trucking, Inc. v. PCL Constructors, Inc.*, 246 Ga. App. 306, 310 (3) (540 SE2d 261) (2000). "Slight consideration is sufficient to sustain a contract." (Citation omitted.) *Franklin v. UAP/GA. AG. CHEM, Inc.*, 237 Ga. App. 71, 74 (514 SE2d 241) (1999). "A valuable consideration is founded on money or something convertible into money or having a value in money."(Footnote omitted.) *Lionheart Legend v. Norwest Bank Minnesota Nat. Assn.*, 253 Ga. App. 663, 666 (560 SE2d 120) (2002).

Here, Mr. Isbell testified that after Credit Nation initially refused to accept the vehicle, he contacted Credit Nation's attorney to resolve the matter. Mr. Isbell stated that he was able to negotiate a deal with Credit Nation where they agreed to accept

16

the Ford Explorer, replace it with a similar vehicle, and provide the Isbells with a loaner vehicle while the company searched for a replacement vehicle. This evidence was sufficient to establish an issue of fact regarding consideration.

> [C]onsideration may be found by the trier of fact from numerous circumstances present in or suggested by the record and capable of development at trial. If [the Isbells'] return of the [vehicle] constituted a forbearance to press legal claims against [Credit Nation] for equipment [defects], this forbearance could constitute consideration for [Credit Nation's] promise to [find a replacement vehicle for the Isbells]. A contract compromising doubtful issues between the parties is supported by consideration.

(Citations and punctuation omitted.) *Giant Peanut & Grain Co. v. Long Mfg. Co.*, 129 Ga. App. 685, 687 (201 SE2d 26) (1973). Therefore, the trial court erred when it found that there was no evidence to support consideration. Id. at 686-687 (concluding that summary judgment was not warranted where jury could infer existence of consideration based upon fact that buyer returned items to seller in return for promise to credit buyer's account).

(b) Credit Nation contends that the oral promise was unenforceable because it lacked a material term, i.e. the identity of the particular vehicle to be sold, and it violated the Statute of Frauds. We disagree

> A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the

17

existence of such a contract. OCGA § 11-2-204 (1). . . . [E]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." OCGA § 11-2-204 (3).

(Citations and punctuation omitted.) *Jones v. Baran Co., LLC*, 290 Ga. App. 578, 579-

580 (660 SE2d 420) (2008). Furthermore,

[i]t is true that a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. OCGA § 11-2-201 (1). Notwithstanding the writing and signature requirements of the Statute of Frauds, however, a contract for the sale of goods is still enforceable "if the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made." OCGA § 11-2-201(3) (b).

(Citations and punctuation omitted.) Id. at 582-583. "The 'contract for sale,' as to

which the admission of the party may take the place of a writing, does not refer to a

contract complete in all its terms, but to a transaction sufficient to stand as proof that

the parties did in fact enter into a contractual relationship." (Citation omitted.)

*Jackson v. Meadows*, 153 Ga. App. 1, 2-3 (3) (264 SE2d 503) (1980).

Here, Mr. Isbell testified that he was expecting a replacement vehicle that was

comparable to the Ford Explorer that he had previously purchased, with the same

18

options and without body damage. While Credit Nation argues that Mr. Isbell actually requested an upgraded vehicle, Credit Nation's general manager admitted that he would try to get Mr. Isbell a replacement vehicle, and if Mr. Isbell found the vehicle suitable, they would swap the vehicles and execute a new contract. Credit Nation admitted that it made numerous attempts to locate similar vehicles and had numerous conversations with Mr. Isbell about these vehicles. While there is a dispute about whether these vehicles were actually similar to the Ford Explorer purchased by the Isbells, any confusion about the "open terms in the agreement were not sufficient to negate the clear intent of the parties to enter into an enforceable agreement." *Unique Designs, Inc. v. Pittard Machinery Co.*, 200 Ga. App. 647, 653 (3) (409 SE2d 241) (1991) (holding that dispute over the purchase price and the accessory packages to be included in sale of lathe was insufficient to negate the clear intent of the parties to enter into an enforceable agreement). Moreover, Credit Nation's statements that it attempted to find a replacement vehicle for the Isbells were sufficient to create a jury question on the issue of part performance of the oral contract. See *Jackson*, supra, 153 Ga. App. at 2-3 (3) (although there was no sufficient written contract on sale of automobile, dealer's admission that it agreed that customer would purchase a vehicle was sufficient to preclude summary judgment on the issue of part performance).

19

4. The Isbells also contend that the trial court erred in granting summary judgment to Credit Nation on their FBPA claims.

> The FBPA proscribes unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce. . . . A single instance of an unfair or deceptive act or practice is a sufficient predicate upon which to base a claim for damages under the FBPA if the public consumer interest would be served thereby. To come within the FBPA, therefore, the deceptive activity must take place in the context of the consumer marketplace.

(Punctuation and footnotes omitted.) *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 642 (2) (560 SE2d 101) (2002). A dealer's sale of a used car falls within the ambit of the FBPA. See, e.g., id. at 643 (2).

(a) The Isbells contend that the trial court erred in granting summary judgment to Credit Nation on their claim that the company violated the FBPA when it misrepresented the Ford Explorer's condition.[5] We disagree.

"A private FBPA claim has three elements: a violation of the Act, causation, and injury." (Punctuation and citation omitted.) *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (2) (637 SE2d 14) (2006). "When the alleged FBPA violation is a misrepresentation, the consumer must show that he exercised due

---

[5] As discussed in Division 2 (a) (ii), the Isbells presented no evidence that Credit Nation was aware of any transmission damage. Consequently, their FBPA claim based on a misrepresentation of the transmission's condition fails.

20

diligence to ascertain the falsity of the statement. Otherwise, the cause of the injury is the consumer's lack of proper diligence, rather than the alleged FBPA violation."Id. at 141.

As we found in Division 2, the Isbells failed to exercise due diligence in ascertaining the falsity of Credit Nation's representations about the Ford Explorer. As such, their FBPA claim on this ground failed, and the trial court properly granted summary judgment on this claim. Id. at 141-142.

(b) The Isbells also argue that the trial court erred in granting summary judgment to Credit Nation since its use of various business entities and trade names during the transaction deceived them and, therefore, violated the FBPA. Their claim is without merit.

The Isbells provide no authority, and we have found none, establishing that the involvement of multiple business entities or use of trade names or "d/b/a" is deceptive. Notably, under OCGA § 10-1-490, a company is allowed to use trade names, and the statute imposes no limit on the number of trade names a business can use. While the FBPA proscribes practices that "caus[e] actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services," OCGA § 10-1-393 (b) (2), the Isbells's claim of confusion is belied by

21

the record. Indeed, Mr. Isbell testified that he knew exactly who he was dealing with. More fatal to their FBPA claim, is the fact that the Isbells do not show what injury they suffered due to any confusion related to entity names. There is no evidence that the Isbells would not have purchased the vehicle had they better understood the businesses involved in the sale and financing of the Ford Explorer. As a result, the trial court did not err in granting summary judgment on this claim.

5. The Isbells assert that the trial court erred in finding that Credit Nation established a bona fide error defense to a TILA violation for failing to accurately describe the payment schedule. Again, we disagree.

TILA errors are only actionable if they are intentional and not bona fide. See 15 USC § 1640 (c). Under 15 USC § 1640 (c),

> [a] creditor or assignee may not be held liable in any action brought under this section . . . for a violation of this subchapter if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such error.

Section 1640 (c) states that "[e]xamples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error."

22

> To utilize the bona fide error defense, a creditor must establish procedures reasonably adapted to avoid errors . . . . No statutory guidelines precisely define such procedures. Generally, creditors must show procedures designed to avoid and prevent error which might slip through procedures aimed at good faith compliance, "a safety catch or a rechecking mechanism." Business procedures that have satisfied this requirement in other circumstances include having the work of one well-trained clerk double-checked by another, and proofreading the agreement.

(Citations and punctuation omitted.) *Wells Fargo Credit Corp. v. Smith*, 803 P. 2d 900, 906 (Ariz. 1990).

Here, the TILA disclosures did not accurately reveal the fact that the parties agreed to a semi-monthly payment plan. The evidence, however, does not support the Isbells' contention that any error was legal in nature and non-clerical. Significantly, Credit Nation's general manager averred that any error in failing to accurately disclose the payment schedule was inadvertent. The evidence shows that Credit Nation used a specialized computer software program to calculate its TILA disclosures, and that managers were trained to use the computer program. The evidence also shows that after a Credit Nation sales manager computed the TILA figures, the finance manger independently computed the figures and verified the sales manager's calculations. The general manager stated that if there was any error under this system, it was the result of a clerical error in writing down the terms of the deal

23

prior to entering the terms into the computer program, a data entry error from inputting the terms into the software program, or a software malfunction. Based on this evidence, Credit Nation established that the error was clerical in nature, and that its system of computing and verifying the TILA disclosures was reasonably-adapted in efforts to avoid the error made in this case. See *In re Gordon*, 389 B. R. 243, 246-247, 249 (N.D. Ala. 2008) (bona fide error defense available to creditors where it presented evidence that its failure to disclose annual percentage rate on installment contract was a clerical error, and that its bookkeeper reviewed the contract completed by a trained employee); *In re Groat*, 369 B. R. 413, 418 (8th Cir. 2007) (noting that TILA provides high tolerance level for what is viewed as an honest mistake in carrying out disclosure obligations, and holding that creditor's failure to include accurate rescission date was a bona fide error given creditor's procedures designed to catch such omissions). Thus, the trial court properly found that Credit Nation established a bona fide defense to the alleged TILA violation.

*Case No. A12A1361*

6. Credit Nation challenges the trial court's denial of its motion to strike 21 exhibits attached to the Isbells' summary judgment brief because the exhibits were not authenticated and contained hearsay. Pretermitting whether the trial court erred

24

in admitting the challenged exhibits, Credit Nation has the responsibility to show harm as well as error. See *Layfield v. Southeastern Const. Coordinators, Inc.*, 229 Ga. App. 71, 73 (2) (492 SE2d 921) (1997). Significantly, since the trial court granted its motion for summary judgment, Credit Nation has not demonstrated any harm by the trial court's refusal to strike the challenged exhibits. Moreover, we did not rely on the challenged exhibits when considering the Isbells claims and reversing the trial court's grant of summary judgment on the breach of contract claim. Since no harm has been shown, Credit Nation's claim affords no basis for reversal. See *Hooks*, supra, 303 Ga. App. at 269 (4) ("[I]t is axiomatic that harm as well as error must be shown to authorize a reversal by this court.") (citation and punctuation omitted).

7. Credit Nation also challenges the trial court's denial of its motion to strike the affidavits of Manheim's Controller and the documents attached thereto. Pretermitting whether the trial court erred in admitting Manheim Controller's first affidavit, the Controller subsequently filed a supplemental affidavit. Based on our discussion in Division 2 above, we found that the supplemental affidavit and documents were admissible as business records. Therefore, we affirm the trial court's denial of Credit Nation's motions to strike.

25

*Judgment affirmed in part and reversed in part in Case A12A1360; judgment affirmed in Case No. A12A1361. Ray and Branch, JJ., concur.*