**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 1, 2016**

# In the Court of Appeals of Georgia

A15A1889. GOBRAN AUTO SALES, INC. v. BELL.

MCFADDEN, Judge.

Charity Bell sued Gobran Auto Sales, Inc., alleging that Gobran Auto misrepresented the condition of a used car it sold her. She asserted claims for violation of the Georgia Motor Vehicle Emission Inspection and Maintenance Act (OCGA § 12-9-40 et seq.), violation of the Georgia Fair Business Practices Act (OCGA § 10-1-390 et seq.), violation of the odometer statute (OCGA § 40-8-5), and fraud. The jury handed down a verdict in her favor on all counts and awarded both compensatory and punitive damages. In its final judgment, the trial court applied the treble damages provisions of both the Fair Business Practices Act and the odometer statute to the compensatory damages award and entered an additional award for attorney fees and litigation expenses.

On appeal Gobran Auto argues that it was entitled to a directed verdict on all counts and that the trial court erred in calculating treble damages and in awarding both punitive and treble damages. About the Georgia Motor Vehicle Emission Inspection and Maintenance Act, we agree with Gobran Auto that it does not support a private right of action. But as to the other counts, we find the evidence sufficient. We also agree with Gobran Auto that the trial court erred in calculating treble damages. Gobran Auto's other claims of error are without merit. Because of the errors we find the trial court to have committed and because the verdict did not allocate compensatory damages among the several counts, we must reverse the judgment entered on the verdict in Bell's favor.

1. *Facts*.

"In reviewing the denial of a motion for directed verdict, we construe the evidence in the light most favorable to the prevailing party, and determine whether there is any evidence to support the jury's verdict." *Eco-Clean v. Brown*, 324 Ga. App. 523 (749 SE2d 4) (2013) (citation and punctuation omitted).

So viewed, the evidence at trial showed that on March 29, 2013, Bell purchased a 2001 Toyota Avalon from Gobran Auto. Before agreeing to the purchase, Bell and her husband questioned Awny Gobran, the owner of Gobran Auto, about the car.

2

They asked if the car had been in any accidents, if the odometer was accurate, and if there were any hidden issues. Gobran assured them that nothing was wrong with the car and that it was in good condition.

The odometer showed that the car had been driven 147,000 miles. That number was a factor Bell and her husband considered in making the purchase. It turned out not to be true.

Gobran Auto gave Bell an odometer disclosure statement. But it was ambiguous, and Gobran lied about it. It provided:

> I, GOBRAN AUTO SALE, INC. state (sic) that the odometer now reads EXEMPT miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements has been checked.
>
> [ ] (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
>
> [ ] (2) I hereby certify that the odometer reading is NOT the actual milage. WARNING: ODOMETER DISCREPANCY.

Neither (1) nor (2) was checked. Gobran explained to Bell that the word "exempt" appeared on the statement because he had purchased the car at auction. The odometer disclosure statement was referenced on a warranty disclaimer, which Bell signed,

3

acknowledging that Gobran Auto sold the car "as is." Like the odometer disclosure statement, the warranty disclaimer also stated, "Current Odometer Mileage: EXEMPT." Again Gobran explained that the document said "exempt" because he had purchased the car from an auction and that he would change it. Bell specifically asked if the odometer had been rolled back and Gobran said no, that the odometer reflected the car's actual mileage. This turned out not to be true.

Four days after Bell purchased the car, the check engine light came on. She returned the car to Gobran Auto, where a mechanic said a hose needed to be replaced. He replaced the hose and the light went out, but it came back on later that night. Again Bell returned the car to Gobran Auto, which kept it for two or three days. When Bell picked up the car, the light was initially off but it came back on again. This time she took the car to a Toyota dealership. A service advisor at the dealership told Bell that something had been spliced to get the light off and that the car needed a charcoal canister and a VSV valve in order to solve the problem.

Bell took the car for an emissions inspection. It did not pass. She took the car back to Gobran Auto, which kept it for three or four days. When she picked up the car, Gobran Auto gave her a certificate stating that the car had passed its emissions inspection on April 18, 2013, almost three weeks after Bell had purchased the car.

4

But once again, the check engine light came on. For the second time, Bell took the car to the Toyota dealership. The service advisor explained that since the last time he had seen the car, someone had done a poor job trying to repair it and had grounded a wire near a fuel filter neck. He explained that this repair could cause a fire and was not legal. According to another witness, a mechanic who had worked on Gobran Auto cars, this was something Gobran had done before. From his experience, the Toyota dealership's service advisor believed that this repair was made to keep the check engine light off or to enable the car to pass an emissions inspection. For a final time, Bell took the car back to Gobran Auto, but Gobran refused to do further work on the car.

At that point, Bell contacted Georgia's Clean Air Force, the state emissions testing program, which informed her that the car did not have a valid emissions inspection at the time of the sale. Bell secured a vehicle history report from Carfax, which showed that the car had been damaged in an accident and that its last reported odometer reading was 237,271, about 90,000 miles more than the mileage shown on the odometer.

A certified mechanic testified at trial that he formerly worked at a shop that did work for Gobran. He testified that Gobran would bring cars to the shop and instruct

5

the mechanic to replace their control modules – even though control modules rarely fail. When the control modules were replaced, the mechanic explained, the cars' odometers would show the mileage from the newly installed control modules rather than the actual mileages. The mechanic said that, essentially, he was putting new, false mileages on the cars by replacing the control modules.

An independent vehicle appraiser testified at trial that given the car's condition, including its possibly rolled-back odometer, collision repairs, lack of a valid emissions certificate at the time of the sale, and failed emissions testing, the car was worth $1,690.50 – $3,209.50 less than the $4,900 Bell had paid.

The jury completed a special verdict form, finding that Gobran Auto violated the Motor Vehicle Emission Inspection and Maintenance Act, the odometer statute, and the Fair Business Practices Act (the latter intentionally); that Gobran Auto committed fraud; and that Gobran Auto's fraudulent actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences." . The jury awarded Bell $4,114.50 in compensatory damages and $3,000 in punitive damages. The trial court entered judgment on the jury's verdict, reserving the issues of attorney

6

fees and treble damages. After a hearing, the trial court awarded Bell $17,603 in attorney fees and litigation expenses and

– on the basis of the treble damages provisions in both the Fair Business Practices Act and the odometer statute – held that the jury's $4,114.50 compensatory damages award should be multiplied by six to $24,684 (rounded down). Gobran Auto filed this appeal.

2. *Georgia Motor Vehicle Emission Inspection and Maintenance Act*.

Gobran Auto argues that the trial court erred in denying its motion for a directed verdict on Bell's claim under OCGA § 12-9-54 of the Georgia Motor Vehicle Emission Inspection and Maintenance Act. It contends that a private civil cause of action may not be implied to remedy a violation of that statute, which prohibits the sale of some motor vehicles without a valid certificate of emission inspection. We agree.

OCGA § 12-9-54 of the Act provides in part:

No person shall sell any motor vehicle which is intended for highway use if such vehicle is at the time of the sale a responsible motor vehicle required to have a certificate of emission inspection under Code Section 12-9-45, unless there appears on such vehicle an unexpired valid certificate of emission inspection issued pursuant to this article. Any person violating this Code section shall be guilty of a misdemeanor and,

7

upon conviction thereof, shall be punished by a fine of $100.00 for a first offense, $500.00 for a second offense, and $1,000.00 for each subsequent offense. . . .

The statute does not provide a civil remedy nor contain an express private cause of action. It is a penal statute, as it provides that any person who sells a vehicle without a required, valid certificate of emission inspection is guilty of a misdemeanor. See *Anthony v. American Gen. Financial Svcs*., 287 Ga. 448, 454 (2) (a) (697 SE2d 166) (2010). Although "civil liability may be authorized where the legislature has indicated a strong public policy for imposing a civil as well as criminal penalty for violation of a penal statute[,] . . . the indication that the legislature meant to impose a civil as well as criminal penalty must be found in the provisions of the statute at issue, not extrapolated from the public policy the statute generally appears to advance." Id. at 455 (2) (a) (citations, punctuation, and emphasis omitted).The Act imposes only a criminal penalty; "nothing in the provisions of [OCGA § 12-9-54] creates a private cause of action in favor of the victim purportedly harmed by the violation of the penal statute." Id. at 455 (2) (a) (citation and emphasis omitted). Therefore, "a private civil cause of action may not be implied to remedy a violation of OCGA § [12-9-54]." Id.

at 459 (2) (d). It follows that the trial court erred by denying Gobran Auto's motion for directed verdict on this count of the complaint.

Bell argues that Gobran Auto's violation of the Act entitled her to damages under OCGA §§ 51-1-6 ("When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.") and 51-1-8 ("Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."). However, those statutes do not create causes of action, but simply set forth general principles of tort law, "authoriz[ing] the recovery of damages for the breach of a legal duty otherwise arising, though not expressly stated, under a statute or common law." *Bridges v. Wooten*, 305 Ga. App. 682, 684 (1) (700 SE2d 678) (2010) (citation and punctuation omitted). See also *Wells Fargo Bank v. Jenkins*, 293 Ga. 162, 164 (744 SE2d 686) (2013); *Reilly v. Alcan Aluminum Corp.*, 272 Ga. 279, 281 (1) (528 SE2d 238) (2000). Therefore, in spite of Bell's reference to those general tort statutes, this particular claim is actually based on Gobran Auto's violation of the Act, a criminal

9

statute. And, as detailed above, a private civil cause of action may not be implied to remedy such a violation. OCGA §§ 51-1-6 and 51-1-8 do not change this outcome.

In support of her contention that she has a cause of action against Gobran Auto for violating OCGA § 12-9-54, Bell argues that "Georgia courts have sustained numerous private causes of action for violations of the Georgia Motor Vehicle Inspection and Maintenance Act." But she cites no binding authority in support of this argument. Instead, she gives only Westlaw citations to unpublished orders of United States District Courts and Georgia Superior Courts.

Because the jury did not allocate the compensatory damages award among the several counts, we cannot ascertain if and to what extent the jury based that award on the unsustainable emissions count. "Accordingly, the jury's verdict must be reversed in its entirety and the case remanded for a new trial." *Legacy Academy v. Mamilove, LLC*, 297 Ga. 15, 21 (3) (771 SE2d 868) (2015) (citation omitted). We will address Gobran Auto's other enumerations of error because they are relevant to retrial.

*3. Fraud, Georgia Fair Business Practices Act, and odometer statute.*

Gobran Auto also appeals from the trial court's denial of its motion for directed verdict as to Bell's other claims – fraud, violation of the Georgia Fair Business Practices Act, and violation of the odometer statute. Specifically it argues that those

claims are barred by her failure to obtain a Carfax report before purchasing the car.

Citing *Isbell v. Credit Nation Lending Svc.*, 319 Ga. App. 19, 25-26 (2) (b) (735 SE2d 46) (2012), Gobran Auto argues that without a Carfax report, Bell's reliance on any representations about the car was not justified. We disagree.

It is true that in *Isbell* we held as, a matter of law, that the plaintiff buyers had failed to exercise due diligence. But there is no evidence here of the sort of notice that controlled our decision in *Isbell*. There the buyers of a used truck asserted claims for fraud, breach of an oral contract, violations of the Georgia Fair Business Practices Act, and violations of the federal Truth in Lending Act (15 USC § 1601 et seq.). Id. at 19. They sued the seller and the seller's financier, contending that the condition of the truck had been misrepresented to them. Id. at 19-21. The evidence showed that the buyers failed to obtain a vehicle history report or to have their own mechanic inspect the truck even though they "were specifically warned that the vehicle may have a bent frame" and were offered an opportunity to have the truck inspected. Id. at 26 (2) (b). Given this specific warning, we concluded that as a matter of law, the buyers had failed to exercise due diligence to discover that the truck had suffered frame damage in a prior automobile accident. Id. Here, in contrast, Gobran Auto has pointed to no evidence that Bell was put on notice that the odometer reading was false or that the

11

car did not have a valid emissions inspection at the time of the sale. These facts distinguish Bell's case from *Isbell*.

Gobran Auto argues that the "as is" disclaimer was sufficient to put Bell on notice of the false odometer reading. We are not persuaded. Bell testified that she specifically asked if the odometer had been rolled back and Gobran responded that the odometer reflected the car's actual mileage. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." OCGA § 11-2-313 (1) (a). See also *Mitchell v. Backus Cadillac-Pontiac*, 274 Ga. App. 330, 337-338 (5) (618 SE2d 87) (2005). And "the 'as is' language used here is ineffective to negate an express warranty." *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 767 (1) (208 SE2d 794) (1974).

4. *Damages.*

Gobran Auto argues that the trial court erred by awarding Bell treble damages twice. We agree. The jury awarded Bell compensatory damages of $4,114.50. In addition to that amount, the trial court awarded $24,684 on the basis of both the treble damages provision in the Fair Business Practices Act, OCGA § 10-1-399 (c), and the treble damages provision in the odometer statute, OCGA § 40-8-5 (g) (1) (A). The

12

verdict did not allocate the compensatory damages among the four counts for which the jury found Gobran Auto liable. Therefore, we must presume that no more than part of the total compensatory damages award was for the Fair Business Practices Act violation and no more than part was for the odometer statute violation. See OCGA § 9-12-4 ("Verdicts shall have a reasonable intendment and shall receive a reasonable construction."). It follows that the trial court erred by awarding treble damages of the *entire* compensatory damages award for each violation, which amounted to sextuple damages for each violation.

We pretermit whether, in a proper case, damages arising from conduct that violates the odometer statute can be doubled under that statute and redoubled under the Fair Business Practices Act, which likewise is violated by the conduct. We would be able to decide this issue only on a record in which damages under the odometer statute are segregated, which, as detailed above, is not the case here.

*Judgment reversed. Ellington, P. J., concurs. Dillard, J., concurs fully in Divisions 1, 2, and 4 and concurs in judgment only Division 3.*