**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 15, 2012**

# In the Court of Appeals of Georgia

A12A1555. PARROTT v. THE STATE.

RAY, Judge.

After a jury trial, Reginald Lee Parrott was convicted of one count of child molestation.[1] He appeals from the denial of his motion for a new trial, enumerating as error: 1) the trial court's decision to allow oblique references by the prosecutor to the fact that he took and failed a polygraph test; 2) the trial court's refusal to excuse a juror for cause; and 3) the trial court's finding, despite his contention that the State failed to prove intent, that the evidence was sufficient to sustain a conviction. Finding no error, we affirm.

---

[1] OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person: Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person").

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the evidence shows that the victim, K. N., on November 20, 2009, spent the night at Parrott's home. Parrott is married to K. N.'s biological mother. K. N., who was fifteen at the time of the crime, had been adopted at a young age and resided with an aunt. On the night at issue, K. N. fell asleep alone in bed. Early in the morning, K. N. became aware that Parrott was touching her breasts through her tank top. She attempted to roll away, but Parrott slid his hand into her sweatpants and rubbed her vagina over her panties. She felt his aroused penis against her, and when he tried to pull down her sweatpants, she got out of bed and went to the garage, where she sat and cried. Parrott came into the garage and asked if she was "okay." She said yes, but continued to sit there and cry. K. N. later asked to go home, and the next day, told her aunt what happened.

---

[2] (Citations omitted.) *Maloney v. State*, __ Ga. App. __ (731 SE2d 133) (2012).

The aunt called K. N.'s biological mother and told her what K. N. had said. Parrott then called the aunt's home, and she answered. Apparently under the misapprehension that he was talking to K. N., Parrott said, "baby, I'm so sorry. I didn't mean to hurt you. I thought you were [my wife]." After the aunt revealed her identity, Parrott told the aunt that he wished K. N. had not awakened, that he hoped all this would go away, that he would pay for K. N. to "have someone to talk to," that he was "half asleep" and that when he woke up, he realized what was going on and left. Parrott later called again and told the aunt's boyfriend that he thought K. N. was his wife and that he wished she had not awakened. K. N.'s aunt contacted the police.

On November 25, 2009, a Coweta County Sheriff's Office investigator conducted a video interview with Parrott. Parrott said that he fell asleep in a bed belonging to one of his children while watching television, and K. N. then got in bed with him. He said he awakened when she climbed over him to get out of bed, and that he then got in bed with his wife. He denied speaking to K. N., denied touching her, and said he knew nothing about the episode until the next day, when his wife contacted him after speaking with K. N.'s aunt.

In a second interview conducted the same day in preparation for a polygraph exam that police ultimately never conducted, Parrott admitted he had placed his hand

3

on K. N. "where it shouldn't have been," and "on her vagina area." He denied touching her breasts, but said that he "woke up doing some stuff that I shouldn't did." The investigator asked Parrott if he thought K. N. was his wife and he responded, "I guess I did." Parrott told the investigator he had not mentioned any of this earlier because he "wasn't clear" and "wanted to be 100% clear where I was at and what I had to tell you." When police asked Parrott if he had any medical conditions or had received psychiatric treatment, he said no.

At trial, Parrott did not contest the allegations of inappropriate touching, but rather argued that he lacked any criminal intent because he touched K. N. while he was asleep. He argued that he has parasomnia, a medical condition in which people may engage in various behaviors while asleep, including sleepwalking and sexual acts. Parrott's expert witness, psychiatrist Dr. Gene Abel, performed several tests to gauge, among other things, Parrott's sexual interests and whether he had parasomnia. These tests included a polygraph. During that polygraph, Parrott was asked whether he had ever fondled K. N.'s breasts and vaginal area, or whether he had ever touched K. N. for sexual gratification. Parrott failed the polygraph examination.

1. In his first enumeration, Parrott contends that the trial court erred in permitting the prosecutor to "inform the jury appellant had submitted to and failed a polygraph examination."[3]

Outside of the presence of the jury, Parrott's counsel asked the court to rule that the State could not address the issue of the failed polygraph, arguing that his client had not stipulated to its admission; that it was hearsay, prejudicial, and irrelevant; and that Abel did not rely on the test to form his expert opinion. Abel had included polygraph test results in reports prepared for other defendants, but left them out of Parrott's report. Counsel for the State thus argued that he wanted to elicit the testimony for impeachment purposes, because Abel's omitting the negative results called his credibility into question. The trial court ruled that in the interest of a thorough and sifting cross-examination, the prosecutor could refer to the polygraph as the "other test," but could not refer to it as a polygraph. Parrott's counsel raised a continuing objection to "any mention of the test," which the court recognized.[4]

---

[3] Parrott additionally claims that the results of the polygraph were admitted as hearsay, but presents no argument or citation to authority on this point. Thus, he has abandoned any such claim under Court of Appeals Rule 25 (c) (2).

[4] The Court notes that Parrott was under no compulsion to call Abel as a witness. Parrott did so with the understanding that the prosecution would attempt to impeach Abel because Abel had discounted the unfavorable results of the polygraph

It is well-settled that, absent stipulation by the parties, results identified as being from polygraph examinations are generally inadmissible,[5] though they may sometimes be admitted to explain conduct.[6] It is also well-settled that the scope of cross-examination lies within the sound discretion of the trial court, and that a ruling on this issue will not be disturbed on appeal absent an abuse of that discretion.[7] Likewise, the trial court has broad, though not unlimited, discretion to determine the scope of closing arguments,[8] which are judged by the context in which they are made.[9]

At trial, the prosecutor followed the trial court's order only to the extent that he did not refer to a "polygraph" or "lie detector" test. Rather, he at times referred to in his analysis.

[5] See *Norman v. State*, 278 Ga. App. 497, 498 (3) (629 SE2d 489) (2006) (polygraph results are inadmissible unless stipulated, but there is no prejudice in apprising the jury that the test was taken if no inference is raised as to results).

[6] See *Morris v. State*, 264 Ga. 823, 824 (2) (452 SE2d 100) (1995) (absent stipulation, the jury may be told that a polygraph was administered only to explain an actor's conduct and motives if those are "matters concerning which the truth must be found") (citations omitted).

[7] *Rogers v. State*, 282 Ga. 659, 667 (8) (653 SE2d 31) (2007).

[8] *DeCastro v. State*, 221 Ga. App. 83, 88 (3) (470 SE2d 748) (1996).

[9] *Hughes v. State*, 302 Ga. App. 251, 253 (1) (690 SE2d 898) (2010).

the test as an "objective test," and from this and other statements, Parrott asserts error, arguing that the jury could have inferred that the test was a polygraph. For the reasons that follow, we find this argument unpersuasive.

On cross-examination, Abel testified that he based his evaluation in large part on Parrott's own statements to him. The prosecutor asked Abel if he had conducted tests to gauge Parrott's "accuracy or credibility," and if he had talked with Parrott about doing an "objective test" to evaluate Parrott's statements to him. Abel said yes. Then, without objection, the prosecutor asked Abel to list the questions posed by the "other test." Abel testified from his notes that the questions were: "Have you fondled [K. N.'s] breast? Have you fondled [K. N.'s] vaginal area? Have you touched [K. N.] for sexual gratification?" Asked if Parrott passed "this test," Abel testified, "No." Parrott also takes issue with closing argument, in which the prosecutor, again without objection, repeated the three questions from the test, then said Parrott told Abel "'give me whatever test you want to give me, I'll pass.' And then the results came in and he didn't pass because he lied. He lied. He lied. He continues to lie."

While we do not endorse the prosecutor's tactics, we are constrained to find that Parrott's enumeration of error on this point fails. Below, Parrott raised a continuing objection only to "any mention of this other test." However, on appeal he

argues that the prosecutor exceeded the scope of the trial court's ruling by referring to the polygraph as an "objective test" as opposed to "the other test," and he complains about references to the "results" of the test. Parrott made no objection below either to the prosecutor's exceeding the scope of the instructions, or to the mention of the test results.

> Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court. The rule is that the scope of review is limited to the scope of the ruling in the trial court as shown by the trial record and cannot be enlarged or transformed through a process of switching [or] shifting.[10]

Parrott also argues that the jury could have inferred from the prosecutor's questions and closing argument that the "objective test" was a polygraph. We find this argument unpersuasive.

Polygraph tests are widely viewed as *not* being objective – something Parrott concedes in his brief. The reason polygraph evidence is generally inadmissible absent

---

[10] (Citation, punctuation, and footnote omitted.) *Guild v. State*, 234 Ga. App. 862, 867-868 (5) (a) (508 SE2d 231) (1998).

stipulation by the parties is because it has long been deemed unreliable in Georgia.[11]

As Parrott points out, several jurors during voir dire indicated they were familiar with polygraph tests because of their work in connection with the legal system and law enforcement. This familiarity makes it *less likely* that they would believe a reference to an "objective test" meant a reference to a polygraph, given that a polygraph is not viewed as an objective test.

Further, there were references at trial to other objective tests that were not polygraphs. Abel testified that he performed "a package" of tests on Parrott. In reference to these tests, the prosecutor asked Abel, without objection, about *two* tests that were "objective measures" to gauge Parrott's credibility. In questioning Abel, the prosecutor mentioned one test–the Abel Assessment, which is not a polygraph–identifying it as a test that evaluated Parrott's "propensity to tell you the truth." The prosecutor then referred to another test, in this instance, the polygraph, but called it only an "independent test."

---

[11] See generally *Lockett v. State*, 258 Ga. App. 178, 180 (2) (573 SE2d 437) (2002) (polygraph tests are not reliable sources of evidence)*; Salisbury v. State*, 221 Ga. 718, 719 (4) (146 SE2d 776) (1966) (polygraph results inadmissible because they are scientifically unreliable as an "accurate means of detecting deception").

9

Additionally, even though police never gave Parrott a polygraph test, he did consent to one, and the jury viewed a videotape of him sitting in the polygraph examination room participating in a pre-test interview with police. The jury also heard testimony from the police polygraph examiner who interviewed Parrott in preparation for the test. In closing arguments, Parrott's counsel told jurors that given the State's characterization of his client as a liar, "How can you not be unsatisfied with the fact that they didn't strap [Parrott] in that chair that you saw in there and give him a polygraph?"

Given that a polygraph is not an objective test, and that jurors were repeatedly told that Parrott was willing to take a polygraph administered by police, we find unpersuasive Parrott's argument that jurors then inferred from the prosecutor's statements that a second, privately-administered polygraph was conducted or that one of several "objective tests" referred to by the expert was a polygraph.[12] Absent such an inference, we cannot say that the trial court abused its discretion.

---

[12] See generally *Billings v. State*, 278 Ga. 833, 835 (4) (607 SE2d 595) (2005) (detective's indication in videotape that he found defendant's statements unbelievable was deemed unlikely to trigger an inference regarding defendant's decision not to testify at trial); *Crawford v. State*, 301 Ga. App. 633, 636-637 (2) (688 SE2d 409) (2009) (given prior testimony on a closely related subject, a witness's later hearsay statement was deemed unlikely to raise a jury inference as to defendant's guilt).

10

2. Parrott next contends that the trial court erred in refusing to dismiss a juror for cause after she indicated that because her sister had been molested, she had a "conceived notion of this type of person in my mind, which I shouldn't have because he has a right to be proven innocent and I need to listen to that." Asked if the defendant would have to show he was innocent, she replied in the affirmative. The trial court then explained that the State has the burden of proving guilt. The juror said she believed she could be fair and make a decision based only on the evidence presented.

> Whether to strike a juror for cause lies within the sound discretion of the trial court. Unless the juror holds an opinion regarding the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based on the evidence and court instructions, a court need not excuse the juror for cause. . . . [T]he judge is uniquely positioned to observe the juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict. A juror who expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service.[13]

---

[13] (Citation and punctuation omitted.) *Beaudoin v. State*, 311 Ga. App. 91, 92-93 (2) (714 SE2d 624) (2011).

11

Here, because the prospective juror indicated that her bias was against the nature of the crime rather than against Parrott, and because she said she could determine the issues fairly based upon the evidence presented, the trial court did not abuse its discretion in refusing to strike her.[14]

3. Parrott contends that the evidence is insufficient to sustain his conviction because the State failed to show that he intended to gratify either his own or K. N.'s sexual desires. He argues that because he was asleep, he had no knowledge of his actions. Parrott assigns error to the trial court's denial of his motion for a directed verdict, postulating that all the evidence was circumstantial and did not exclude any other reasonable hypothesis except that of guilt.[15] We disagree.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a

---

[14] See *Pearce v. State*, 300 Ga. App. 777, 780-781 (2) (686 SE2d 392) (2009) (trial court not required to excuse prospective juror for cause where prospective juror was victim of child molestation and indicated he "probably could" be fair and impartial). See also *Amador v. State*, 310 Ga. App. 280, 281 (1) (713 SE2d 423) (2011) (neither a prospective juror's reservations about her own partiality, nor her statement that she would "try" to decide the case based upon the court's instructions and evidence required the trial court to strike her for cause).

[15] See OCGA § 24-4-6.

presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[16]

"A motion for directed verdict in a criminal case should only be granted where there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. *If there is any evidence of guilt, it is for the jury to decide whether that evidence, circumstantial though it may be, is sufficient to warrant a conviction.*"[17]

Here, the State's case against Parrott was not based entirely on circumstantial evidence. It was also based on K. N.'s testimony that Parrott touched her inappropriately and did not stop touching her when she tried to move away.[18] "Intent,

---

[16] (Citation omitted.) *Valentine v. State*, 301 Ga. App. 630, 630 (689 SE2d 76) (2009).

[17] (Citation and punctuation omitted; emphasis supplied.) *Morris v. State*, 226 Ga. App. 535, 535-536 (1) (488 SE2d 685) (1997).

[18] See *Cook v. State*, 276 Ga. App. 803, 804-805 (1) (625 SE2d 83) (2005) (testimony of victim is direct evidence; testimony of victim and those to whom she reported defendant's actions sufficient to sustain child molestation conviction); *Cunningham v. State*, 240 Ga. App. 92, 99 (4) (b) (522 SE2d 684) (1999) (evidence not merely circumstantial, and denial of directed verdict upheld, where although defendant alleged there "was a possibility that he had no knowledge or participation" in sex with another defendant and child victim, victim testified that defendant was

13

which is a mental attitude, is commonly detectable only inferentially, and the law accommodates this."[19] While a person is not presumed to act with criminal intention,[20] "[i]ntent is a question of fact to be determined upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[21]

Other evidence included K. N.'s testimony that Parrott followed her to the garage and asked if she was all right. Further, when defense counsel asked on cross-examination if Parrott had done anything inappropriate prior to this incident, K. N. responded, "[T]here were some things that were – could be interpreted either way." The jury also heard testimony that Parrott apologized for his actions and stated that

involved).

[19] (Citation omitted.) *Klausen v. State*, 294 Ga. App. 463, 465 (1) (669 SE2d 460) (2008) (child molestation conviction upheld where, although defendant contended victim was unaware of his presence while he masturbated as she watched television, jury could infer that victim was aware of defendant's actions given his proximity).

[20] OCGA § 16-2-6.

[21] (Punctuation and footnote omitted.) *DeLong v. State*, 310 Ga. App. 518, 520 (1) (714 SE2d 98) (2011) (criminal intent found even where, inter alia, defendant "claimed he could not remember how he had come to be in such a position" when he was found in bed with his underwear pulled down, next to minor child who had what appeared to be fecal matter smeared on her buttocks).

he believed K. N. was his wife. Additionally, the jury heard testimony from police indicating that Parrott's statements to them not only conflicted with K. N.'s, but were internally inconsistent. For example, in one interview, Parrott stated that he knew nothing about the inappropriate touching until the day after it occurred; in a later interview on the same day, he admitted touching K. N.'s vaginal area.

Although Parrott questions whether the State adequately showed his intent, he does so by arguing that his expert psychiatric witness testified that it was "highly likely" that Parrott was in a parasomniac episode when the touching occurred, and by arguing that various other witnesses presented testimony as to Parrott's abnormal actions while asleep. However, "this argument addresses itself to the credibility of the witnesses, which is a matter within the province of the jury."[22]

> [W]hether [Parrott's] intentions were as innocent as he asserted, . . . or to arouse his own sexual desires as found by the jury, was peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported

---

[22] (Citation and punctuation omitted.) *Moody v. State*, 206 Ga. App. 387, 391 (5) (425 SE2d 397) (1992) (denial of directed verdict in child molestation case upheld based on circumstantial evidence where defendant challenged victim's credibility based on her inconsistent statements); *Klausen*, supra (jury may assess credibility of witnesses and weigh it against other evidence).

by evidence which is exceedingly weak . . . the verdict will not be set aside on that ground.[23]

Here, K. N.'s testimony provided direct evidence, but even if the State's case had relied solely on circumstantial evidence, although "such evidence had to exclude every reasonable hypothesis except the guilt of the accused, . . . it did not have to remove every possibility of his innocence."[24] Here, the jury was entitled to infer from the direct and circumstantial evidence that Parrott acted with the intent to arouse or satisfy his own sexual desires. The evidence was sufficient to convict him,[25] and the trial court did not err in denying his motion for a directed verdict.

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[23] (Citation omitted.) *Klausen*, supra at 465 (1).

[24] (Citations and punctuation omitted.) *Hunter v. State*, 194 Ga. App. 711, 713 (3) (391 SE2d 695) (1990).

[25] *Jackson*, supra.