**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2013**

# In the Court of Appeals of Georgia

A13A0714. RAYSONI v. PAYLESS AUTO DEALS, LLC et al.

MCMILLIAN, Judge.

Subdoh Raysoni appeals the dismissal of his complaint against a used car dealership and its salesman. Raysoni alleges that Payless Auto Deals, LLC and its salesman Ahsan Ul-Haque (collectively referred to as "Payless") orally misrepresented that the used vehicle that he purchased had not been wrecked when, in fact, it had previously sustained significant frame damage. The trial court granted a motion for judgment on the pleadings because the buyer's order attached to the complaint disclosed to Raysoni in writing that the vehicle had been damaged and was replete with disclaimers. Finding no error, we affirm.

> A motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment as a matter of law. When we review the grant of a motion for judgment on the pleadings,

we owe no deference to the decision of the court below. And, like the court below, we must accept the truth of the factual allegations contained in the pleadings of the nonmoving party, and we view the pleadings in the light most favorable to the nonmoving party.

(Citations omitted.) *Pryce v. Rhodes*, 316 Ga. App. 523 (729 SE2d 641) (2012).[1]

Thus, "[f]or purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts." (Citation and punctuation omitted.) *Hall v. Sencore, Inc.*, 302 Ga. App. 367 (691 SE2d 266) (2010) (appellate court's review of trial court's order granting judgment on the pleadings is de novo).

---

[1] Although Raysoni suggests that the trial court should have ruled upon this as a motion for summary judgment because the parties submitted additional materials outside the pleadings, the trial court did not rule on that basis, and it appears that the parties never requested that the court treat the motion as one for summary judgment. The trial court's order contains no indication that he considered any matters outside the pleadings, and accordingly, we also limit our review to the pleadings. "The rule is that the scope of [appellate] review is limited to the scope of the ruling in the trial court as shown by the trial record and cannot be enlarged or transformed through a process of switching or shifting." (Citation and punctuation omitted.) *Parrott v. State*, 318 Ga. App. 545, 549 (1) (736 SE2d 436) (2012).

So viewed, Raysoni's complaint asserts that on or about September 18, 2011, he visited Payless looking for "a reliable and durable automobile," and the salesman[2] showed him a 2008 Honda Odyssey (the "vehicle"). Raysoni specifically asked the salesman whether the vehicle "had anything wrong with it, such as a prior wreck or damage," and the salesman represented that the vehicle was clean and undamaged. Raysoni also requested to see a Carfax report and the salesman showed him a report from the Carfax website reflecting no accident or damage to the vehicle.[3]

Over time, however, Raysoni began to notice a musty smell in the vehicle, and he decided to trade it in. On November 23, 2011, he took the vehicle to Carmax, where he was told that the vehicle had frame damage and that extensive paint and body work had been performed on it. Carmax appraised the vehicle at $7,000.[4] Raysoni then had the vehicle inspected and discovered that it had suffered significant frame damage, that anyone in the used car business would have known the vehicle

---

[2] The brief Payless filed in support of the motion for judgment on the pleadings indicated that this salesman was Ul-Haque.

[3] We note that Raysoni does not assert that Payless in any way misrepresented the actual contents of the Carfax report.

[4] The Buyer's Order indicates that Raysoni paid Payless $17,029.93 for the vehicle.

3

had sustained this damage due to a wreck, and that the vehicle needed $10,000 to $12,000 in repairs to address the obvious and exposed damage, without regard to any required mechanical repairs. Even with these repairs, the vehicle would not be in "pre-accident" condition, and the loss in the vehicle's value would be at least $8,000. Thus, the vehicle was not clean and undamaged as represented and had, in fact, been wrecked. At the automobile auction, the vehicle had been announced as a frame-damaged car, and thus Payless knew the frame was damaged and used the lag time in reporting the accident to Carfax to represent the vehicle as "clean." Raysoni asserts that he would not have purchased the vehicle had he been told that it had been in a prior wreck and sustained significant frame damage.

Raysoni returned the car to Payless and asked for a re-purchase, but Ul-Haque refused, stating that he did not buy back cars, and Raysoni subsequently sent Payless notice pursuant to OCGA § 10-1-399 of Georgia's Fair Business Practices Act ("FBPA"), OCGA §§ 10-1-390 et seq. His subsequent complaint asserted claims for rescission based upon misrepresentation of material facts, violations of fair trade practices, deceit, and revocation of acceptance.

Payless moved for judgment on the pleadings, and the trial court granted that motion finding that "the undisputed facts made clear from Plaintiff Raysoni's own

exhibit entitles [Payless] to judgment as a matter of law. In fact, the Bill of Sale [Raysoni] attached to his Complaint is replete with disclaimers cautioning the buyer about the purchase of the vehicle." The trial court, however, did not specifically address each of Payless' asserted claims. On appeal, Raysoni asserts that the trial court erred in granting Payless' motion for judgment on the pleadings as to his FBPA, fraud, and revocation of acceptance claims.

1. Raysoni asserts that the trial court erred in dismissing his FBPA claims, which alleged that Payless orally assured him in response to a direct inquiry that the vehicle had not been wrecked when Payless, in fact, knew that the car had been wrecked.

"A dealer's sale of a used car falls within the ambit of the FBPA." (Citation omitted.) *Isbell v. Credit Nation Lending Serv., LLC*, 319 Ga. App. 19, 29 (4) (735 SE2d 46) (2012). "A prerequisite to stating a claim for relief under the [FBPA] is the commission of some unfair act or deceptive practice, from which the Act is designed to protect the public. OCGA § 10-1-391 (a)." *Rivergate Corp. v. McIntosh*, 205 Ga. App. 189, 192 (421 SE2d 737) (1992). And "[l]ike a claim for common-law fraud, a claim under the [FBPA] requires a showing that a defendant committed a volitional act constituting an unfair or deceptive act or practice conjoined with culpable

5

knowledge of the nature (but not necessarily the illegality) of the act." (Citations and punctuation omitted.) *Paulk v. Thomasville Ford Lincoln Mercury*, 317 Ga. App. 780, 783 (2) (732 SE2d 297) (2012).

Here, taking the allegations of the complaint as true, the salesman knowingly misrepresented the condition of the vehicle by stating that it was clean and undamaged. But even assuming, without deciding, that this misrepresentation violated the FBPA, "[a] private FBPA claim has three elements: a violation of the Act, causation, and injury." (Punctuation and citation omitted.) *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (2) (637 SE2d 14) (2006). And "[t]he [FBPA] incorporates the 'reliance' element of the common law tort of misrepresentation into the causation element of a FBPA claim. [Cit.]. Consequently, justifiable reliance is an essential element." (Citations and punctuation omitted.) *Lynas v. Williams*, 216 Ga. App. 434, 437 (3) (b) (454 SE2d 570) (1995). Therefore, "[w]hen the alleged FBPA violation is a misrepresentation, the consumer must show that he exercised due diligence to ascertain the falsity of the statement. Otherwise, the cause of the injury is the consumer's lack of proper diligence, rather than the alleged FBPA violation." *Tiismann*, 281 Ga. at 141 (2).

The Buyer's Order attached to Raysoni's complaint,[5] upon which he relies in support of his claims of misrepresentation, contains numerous disclaimers. Right above the first signature line on the Buyer's Order is a disclaimer indicating that the vehicle was being sold "***AS-IS NO WARRANTY***" and that the "Customer will pay all costs for any repairs. The dealership assumes no responsibility for any repairs regardless of any oral statements about the vehicle." And at the bottom of the page, right above the third signature line, in slightly smaller type but in all caps, is language indicating that the customer agrees that no warranty was being offered on numerous parts of the vehicle, including the frame and body, and that any representation by the salesman was not binding on Payless. That portion of the Buyer's Order also indicates that "THIS VEHICLE WAS ANNOUNCED HAVING UNIBODY DAMAGE AT THE AUCTION" and that Payless "STRONGLY RECOMMEND[ED] CUSTOMERS SHOULD GET VEHICLE INSPECTED BY A MECHANIC OF THEIR CHOICE BEFORE MAKING THE PURCHASE."

---

[5] "On a motion for judgment on the pleadings, a trial court may consider exhibits attached to and incorporated into the pleadings. [Cit.]" *Ezeoke v. Fia Card Svcs., N.A.*, 320 Ga. App. 73, 75 (739 SE2d 81) (2013). See also *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 832 (2) (503 SE2d 81) (1998). We note that although the copy of the Buyer's Order attached to the complaint is unsigned , Ul-Haque, acting pro se, submitted an answer in the form of a letter, which contains a copy of the Buyer's Order signed by Raysoni that contains the identical disclaimers.

Although Raysoni argues that these disclaimers are themselves deceptive, we find that they are sufficiently prominent and unambiguous to put Raysoni on notice of the prior damage to the vehicle.

> To be deceptive, a business practice must have the tendency or capacity to deceive. Disclaimers and qualifications are not deceptive if they are sufficiently prominent and unambiguous to change the apparent meaning of other unconditional claims and to leave an accurate impression.

(Citations and punctuation omitted.) *Tiismann*, 281 Ga. at 140. Here, the disclaimers were either listed under the boldface notification that the car was being sold "as is" or in all caps, and they appeared directly above the buyer's signature lines.[6] These disclaimers informed Raysoni that he should not rely upon the salesman's

[6] Although in his brief, Raysoni attempts to graft additional definitions and requirements from portions of the FBPA dealing with promotions and from other federal and state statutes into his claim, those requirements do not alter the test for disclaimers under the FBPA. See *Wright v. Safari Club Intl., Inc.*, __ Ga. App. __ (1) (b) (Case No. A13A0130, decided June 28, 2013). Moreover, Raysoni provides citations to the internet for numerous articles and even a publication from the Governor's Office of Consumer Protection that are neither authenticated nor included in the record, and thus we cannot consider them. We take this occasion to remind counsel that "[w]e are limited in our review to matters contained in the appellate record, and a party cannot use his brief as a procedural device to add evidence to the record." (Citation and punctuation omitted.) *Community Newspaper Holdings, Inc. v. King*, 299 Ga. App. 267, 270 (1), n. 9 (682 SE2d 346) (2009).

representations, that the vehicle was listed as having prior damage when it was sold at auction, and that Payless recommended that he get an independent evaluation of the vehicle *before* he bought it.

Lack of justifiable reliance bars a claim under the FBPA. *Lynas*, 216 Ga. App. at 437 (3) (b). And "[i]n order to prove . . . justifiable reliance, a party must show that he exercised his duty of due diligence. Fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence." (Citation omitted.) *Isbell*, 319 Ga. App. at 26 (2) (b). Here, Raysoni ignored the information concerning prior damage and the recommendation for an independent inspection. Although at Raysoni's request, he was shown a Carfax report on the car, which reflected no damage, the disclaimers indicated otherwise.[7] Raysoni had notice and the opportunity to detect the issues with his vehicle before he made his purchase, and his "blind reliance on the salesman's representations when the means of knowledge were at hand shows an unjustifiable lack of due diligence." (Citations and punctuation omitted.) Id. See also *Empire Distributors v. Hub Motors Co.*, 240 Ga. App. 568, 569

---

[7] And contrary to Raysoni's argument, any omissions in the Carfax report, issued by an independent third party, cannot be charged to Payless as part of an alleged scheme to defraud in light of the disclaimers.

(1) (524 SE2d 264) (1999); *Lehman v. Keller*, 297 Ga. App. 371, 373 (1) (677 SE2d 415) (2009) (buyers could not establish the requisite due diligence where they failed to exercise right to inspect property which would have revealed damage allegedly concealed by seller). Accordingly, the trial court properly granted Payless's motion for judgment on the pleadings at to the FBPA claim. See *Isbell*, 319 Ga. App. at 30 (4) (a); *Tiismann*, 281 Ga. at 141-142. *Garcia v. Charles Evans BMW, Inc.*, 222 Ga. App. 121 (473 SE2d 588) (1996) (absence of justifiable reliance precludes FBPA claim where contract clearly stated fact as to which buyer claimed he was misled).

2. For the same reasons, the trial court properly granted judgment on the pleadings on Raysoni's fraud claim. See *Isbell*, 319 Ga. App. at 26 (2) (b).

3. Raysoni also asserts that the trial court erred in granting judgment on the pleadings on his claim of revocation of acceptance. But that claim, too, is based in fraud. Although Raysoni asserts that he was unaware of the non-conforming nature of the vehicle, Payless's disclaimers and his own lack of due diligence similarly defeat his claim for damages based upon revocation of acceptance. Cf. *Isbell*, 319 Ga. App. at 26 (2) (b) (in light of plaintiff's lack of due diligence, his claim for rescission of the contract based upon fraud was not authorized).

4. Raysoni also argues on appeal that the trial court erred in relying on the "As Is" disclosure on the Buyer's Order where the order also contained an express warranty. But the Buyer's Order attached to the complaint contains no express warranty. And our decision, based upon our de novo review of the pleadings, relies on the express language of the disclaimer found beneath the "As-Is" designation as well as the disclaimers at the bottom of the Buyer's Order, not solely on the "As-Is" designation itself.

Raysoni relies on a copy of the Buyer's Order attached to Ul-Haque's answer, which contains the following language in the "Comments" box on the form: "30 days warranty on CV Joints. Payless will replace CV Joints if they will go bad in 30 days of the purchase" to argue that the "As-Is" clause is void under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308. We disagree. As an initial matter, Raysoni is not alleging a breach of warranty claim under the Magnuson-Moss Warranty Act such that 15 U.S.C. § 2508 would apply. Moreover, in light of the express disclaimers in the Buyer's Order, such limited warranty language affecting only one automobile part does not in any way alter or relieve Raysoni's obligation to exercise due diligence under Georgia law. In fact, Raysoni's signatures under the disclaimer language signify his acknowledgment and agreement to the content of those disclaimers. See

11

*Romines v. Wagstaff Motor Co.*, 120 Ga. App. 608, 610 (1) (171 SE2d 752) (1969) (buyer bound by terms of automobile purchase agreement where no allegation that he was prevented from reading it by any trick or fraud of the defendant). The disclaimers put him on notice of damage to the vehicle, and he had the obligation to investigate further before he bought the car.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*

ON MOTION FOR RECONSIDERATION

On motion for reconsideration, Raysoni contends that we overlooked significant Georgia precedent in holding that the disclaimers in the Buyer's Order "negated the antecedent fraud and deceptive practices in the procurement of the contract." In particular, he cites *City Dodge, Inc. v. Gardner*, 232 Ga. 766 (208 SE2d 794) (1974), in which the Georgia Supreme Court held that a merger clause and an "As-Is" disclaimer in an automobile purchase contract did not, as a matter of law, prevent the buyer's reliance on the salesman's fraudulent representation that the car purchased by the buyer had not been wrecked. The Supreme Court held that "the question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact by the jury." Id. at 770. The Court further held that

> [i]t is inconsistent to apply a disclaimer provision of a contract in a tort action brought to determine whether the entire contract is invalid because of alleged prior fraud which induced the execution of the contract. If the contract is invalid because of the antecedent fraud, then the disclaimer provision therein is ineffectual since, in legal contemplation, there is no contract between the parties.

Id.

But *City Dodge* and the other cases cited by Raysoni are distinguishable. The Buyer's Order in this case did not merely contain a merger clause or an "As-Is" disclaimer. Rather, it provided a number of express disclaimers, including one that expressly contradicted the salesman's oral representation that the vehicle had no prior damage, as well as a recommendation that Raysoni obtain an independent evaluation of the vehicle before he bought it, and Raysoni had a duty to read the Buyer's Order before he signed it. Because that document directly contradicted the salesman's representation, Raysoni cannot rely on that representation to rescind the contract. As the Georgia Supreme Court has recently explained:

> It is well-settled law in Georgia that a party who has the capacity and opportunity to read a written contract cannot afterwards set up fraud in the procurement of his signature to the instrument based on oral representations that differ from the terms of the contract. Statements that directly contradict the terms of the agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract.

(Citations and punctuation omitted.) *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 188-189 (2) (718 SE2d 304) (2011). Thus, because Raysoni is not entitled to

rescission as a remedy, he is bound by the disclaimers in the Buyer's Order. Id. at 190 (3).

Accordingly, we find no merit to Raysoni's argument that the issue of whether he could have justifiably relied on Ul-Haque's representation presents a question for the jury. "While justifiable reliance may be a jury question in a fraud case where no contract exists or where the contract has become void, it is a question of law in a case where the contract language prevails and the contract's [provisions preclude] reliance on oral representations." (Citations omitted.) Id.