**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 28, 2024**

# In the Court of Appeals of Georgia

A23A1621. WHITFIELD v. THE STATE.

WATKINS, Judge.

A jury found Ronald Whitfield guilty of multiple crimes resulting from sexual misconduct with three of his biological granddaughters. Following the denial of his motion for new trial, Whitfield appeals. He contends that (1) the evidence was insufficient to support the convictions; and (2) he received ineffective assistance of trial counsel because counsel failed to move for a mistrial despite being informed that after being empaneled, a juror was told by an acquaintance that Whitfield had a reputation for committing the crimes for which he was accused. For the reasons that follow, we discern no reversible error and we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor

determine witness credibility, which are tasks that fall within the exclusive province of the jury, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the record shows that Whitfield is the grandfather of A. M., T. J., and T. W. For a few weeks in 2018, T. J. and her younger sister T. W. lived at Whitfield's house due to their mother's housing insecurity. During that time, when T. J. was either nine or ten years old, Whitfield touched T. J's breasts with his hands after bringing her to his bedroom. On a separate occasion, Whitfield lay on top of T. J. She tried to push him off, but he was too heavy. During this same time frame, Whitfield lay his body on top of T. J.'s younger sister, T. W., at night in his bed and he was "shaking" while he was on top of T. W. Whitfield scared T. W. and she struggled to breathe.

During the time when T. J. and T. W. were living with Whitfield, their cousin A. M., who is also a granddaughter of Whitfield, stayed the night at Whitfield's house while her mother took a trip to Savannah for St. Patrick's Day. A. M. was 11 years old at the time. A. M. was sleeping on the couch when Whitfield picked her up and brought her to his room. While A. M. was lying on his bed, Whitfield put his "private part on

---

[1] (Citations omitted.) *Allison v. State*, 356 Ga. App. 256 (846 SE2d 222) (2020).

2

[her] butt" and put his "private part in [her] butt." A. M. identified Whitfield's "private part" as his penis. Whitfield also touched A. M's breasts, and his penis touched the outside of her vagina.

When A. M.'s mother returned to town, A. M. disclosed Whitfield's abuse. After A. M.'s disclosure, her mother, Y. W., picked up her nieces T. J. and T. W. and asked if Whitfield had touched them, and they both said yes. Y. W. called the police to report the girls' claims. Forensic interviews were conducted of all three girls during which they all disclosed Whitfield's conduct through their words and drawings.

Whitfield was arrested and indicted for several crimes. Specifically, with regard to A. M., he was charged with aggravated child molestation for penetrating her anus with his penis, child molestation for touching her breast, enticing a child for indecent purposes for taking A. M. to his bedroom for the purpose of molesting her, child molestation for rubbing his penis on her, and incest for committing anal sodomy on his granddaughter. As to T. J., he was indicted for child molestation for touching T. J.'s breast and enticing a child for indecent purposes for bringing her to his bedroom for the purpose of molesting her. Lastly, he was indicted for child molestation for laying on top of T. W.

During the trial, Whitfield's adult daughters, Y. W. — mother of A. M. — and R. W. — mother of T. J. and T. W., testified about Whitfield's abuse of them during their childhoods. Y. W. testified that from around the ages of seven to thirteen or fourteen years old, Whitfield touched her inappropriately. He licked her vagina, touched her vagina with his finger, and put his penis between her legs. She disclosed the abuse to her mother, and Whitfield was arrested, but she recanted her outcry under pressure because she was young and did not want to testify. Y. W. ultimately forgave her father, and they reconnected. Y. W. allowed Whitfield to be around her children because she thought he had changed.

R. W. testified that when she was around age ten to twelve, Whitfield put his hand between her legs and fondled her vagina. Despite this, R. W. reconnected with Whitfield because he is her father and she valued the relationship. Although she was concerned to have Whitfield around her children, due to her housing insecurity, she had nowhere else to send T. J. and T. W. She testified that she thought God would protect her children.

A third adult woman, S. L., also testified about childhood sexual abuse inflicted on her by Whitfield, who used to date her mother and with whom she lived for about two years. When S. L. was between the ages of five through nine, Whitfield engaged in

conduct which included caressing S. L.'s chest and buttocks, performing oral sex on her, and having her perform oral sex on him.

Whitfield was tried by a jury and, following the close of evidence, the trial court denied his motion for a directed verdict of acquittal. Whitfield was convicted of all charges. After conducting an evidentiary hearing on Whitfield's amended motion for new trial, the trial court denied said motion. This appeal timely followed.

1. Whitfield contends that the trial court erred in denying his motion for directed verdict of acquittal because the evidence is insufficient to sustain his convictions. We disagree.

Georgia law provides that

[t]he standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.[2]

---

[2] (Citations omitted.) *Hughes v. State*, 297 Ga. App. 217 (676 SE2d 852) (2009).

Moreover, "[a] motion for directed verdict in a criminal case should only be granted where there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. If there is any evidence of guilt, it is for the jury to decide whether that evidence . . . is sufficient to warrant a conviction."[3]

Here, as to the convictions stemming from the crimes committed against A. M. and T. J., Whitifield challenges the credibility of several witnesses and identifies perceived inconsistencies in the testimony. This provides no basis for reversal. "The credibility of a witness shall be a matter to be determined by the trier of fact, and if the case is being heard by a jury, the court shall give the jury proper instructions as to the credibility of a witness."[4] Indeed, "[r]esolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court."[5]

---

[3] (Citation and emphasis omitted.) *Parrott v. State*, 318 Ga. App. 545, 551 (3) (736 SE2d 436) (2012).

[4] OCGA § 24-6-620.

[5] (Citation and punctuation omitted.) *Grissom v. State*, 296 Ga. 406, 408 (1) (768 SE2d 494) (2015).

As to the conviction concerning T. W., Whitfield contends that the evidence does not establish conduct which constitutes child molestation. "A person commits the offense of child molestation when such person . . . [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]"[6] "Immoral or indecent acts constituting child molestation refer to acts generally viewed as morally indelicate or improper or offensive, and which offend against the public's sense of propriety."[7] "The testimony of a victim of child molestation need not be corroborated."[8] "Intent, which is a mental attitude, is commonly detectable only inferentially, and the law accommodates this."[9]

> [T]he child molestation statute does not require proof of the defendant's actual arousal. Instead, the law requires only that the defendant have acted with the intent to arouse his sexual desires. The question of intent is peculiarly a question of fact for determination by the jury, which may

[6] OCGA § 16-6-4 (a) (1).

[7] (Citation and punctuation omitted.) *Wormley v. State*, 255 Ga. App. 347, 348 (565 SE2d 530) (2002).

[8] (Citation and punctuation omitted.) *Chamberlain v. State*, 347 Ga. App. 775, 778 (1) (819 SE2d 303) (2018).

[9] (Citation and punctuation omitted.) *Parrott*, 318 Ga. App. at 552 (3).

7

infer a defendant's intent from the evidence presented at trial. Where the jury finds the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference. [10]

Although a defendant is not presumed to act with criminal intent, the jury "may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." [11]

Here, in her forensic interview, which was played for the jury, T. W. stated that Whitfield laid on top of her at night in his bed with her on her back. Whitfield shook while he was on top of her; T. W. was scared while it was happening; and she had difficulty breathing. While we are mindful not to criminalize innocent behavior between adults and children, contrary to Whitfield's contention, the jury was authorized to find that the encounter described by T. W. was not consistent with innocently fun voluntary rough-housing.

Implicit in Whitfield's argument is an assumption that only behavior which is overtly sexual in nature can support a conviction for child molestation. That is not the

---

[10] (Citations and punctuation omitted.) *McMurria v. State*, 359 Ga. App. 558, 560 (1) (859 SE2d 530) (2021).

[11] OCGA § 16-2-6.

statutory standard, which requires an "immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the [defendant]."[12] This Court has recognized that context matters when considering whether behavior constitutes child molestation. For instance, this Court previously found that there was sufficient evidence to sustain a conviction for child molestation for touching high up on a victim's thigh during a piggy-back ride.[13] The victim testified that not only did the defendant instigate all but one of these piggy-back rides, but he also previously had masturbated in front of her in her bedroom, which conduct provided the basis of a separate child molestation conviction for the defendant.[14] In such a context, the jury was authorized to disregard the defendant's claim that his conduct constituted "only inadvertent contact during play" and to instead infer intent to arouse or satisfy his sexual desires.[15]

In another case, this Court held that there was sufficient evidence to sustain convictions for child molestation for touching the legs of two different children while

---

[12] OCGA § 16-6-4 (a) (1).

[13] See *Cantrell v. State*, 360 Ga. App. 862, 864 (1) (862 SE2d 329) (2021).

[14] Id. at 862-864 (1).

[15] Id. at 864 (1).

the defendant's hands were under the water in a lake.[16] Prior to touching the girls, the defendant, who was a stranger, asked them personal questions.[17] The defendant followed the girls when they swam away and touched one of the girls again when she re-entered the lake.[18] When confronted by a parent of one of the girls, the defendant was naked with an erection.[19] Even though the defendant claimed his contact with the children was accidental, this Court held that "[t]he testimony in [that case] support[ed] the conclusion beyond a reasonable doubt that [the defendant's] actions . . . were 'immoral or indecent' within the meaning of OCGA § 16–6–4 (a)" and that the evidence was sufficient for the trier of fact to infer the defendant's intent to arouse his sexual desires.[20]

While some situations may exist where an adult would lie on a child in a manner which does not constitute child molestation, we cannot say that the evidence demands

---

[16] See *Wormley*, 255 Ga. App. at 347-349.

[17] Id. at 347.

[18] Id. at 347-348.

[19] Id.

[20] Id.

an acquittal here.[21] Whitfield lay his body on top of his frightened granddaughter at night in his bed in such a manner that made it hard for her to breathe. Further, there is extensive evidence of Whitfield's propensity to molest young girls who are family members or otherwise in his care.[22] Indeed, he lay on T. W.'s sister, T. J., in a nearly identical manner. Accordingly, we hold that the evidence is sufficient to sustain all of Whitfield's convictions.

2. Whitfield next contends that he received ineffective assistance of trial counsel because counsel failed to move for a mistrial following disclosure of information by a juror. We hold that Whitfield did not establish reversible error.

Georgia law is clear that

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable

---

[21] See *Parrott*, 318 Ga. App. at 553 (3) ("Whether [defendant's] intentions were innocent as he asserted, or to arouse his own sexual desires as found by the jury, was peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak the verdict will not be set aside on that ground.") (citation and punctuation omitted).

[22] See *McMurria*, 359 Ga. App. at 560 (1) (enumerating defendant's "prior convictions[ ] showing his disposition to molest young girls" as evidence establishing his intent to arouse or gratify his sexual desires).

likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*[23]. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[24]

Here, following the jury's verdict but before sentencing, Whitfield's trial counsel announced to the court that a juror had told her that during the trial an out-of-state friend told the juror that the friend knew of Whitfield and that he "had a reputation for this." Although trial counsel stated that she had the juror's name and phone number, she told the court that she did not have a desire to do anything further with the information. The case proceeded to sentencing. Whitfield contends that his trial counsel was ineffective for failing to move for a mistrial.

Pretermitting whether trial counsel's performance was deficient given the circumstance, Whitfield has not established prejudice. Whitfield is correct that "when an irregularity appears in the conduct of the juror, prejudice is presumed and the

---

[23] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984).

[24] (Citation and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188, 192 (4) (825 SE2d 578) (2019).

burden is on the State to show beyond a reasonable doubt that no harm occurred[;]" however, "this presumption applies only where the issue was properly preserved at trial and raised as error on direct appeal; it does not apply in the context of an ineffective assistance of counsel claim. In the ineffective assistance context, the burden is upon the defendant to prove actual prejudice affirmatively from the record."[25]

Whitfield failed to prove prejudice from the record because he did not present testimony from the juror at issue. The only evidence of any irregularity with the jury is the hearsay statement of trial counsel about what the juror said.

> Hearsay evidence cannot be used either under the first *Strickland* prong to rebut the reasonableness of trial counsel's tactical decision or under the second *Strickland* prong to establish that the defense was prejudiced by counsel's deficient performance. Either the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony.[26]

Without the testimony of the juror at issue, Whitifeld failed to affirmatively prove on the record the veracity of what the juror told trial counsel, what effect the statement about Whitfield's reputation had on the juror's opinion of his guilt in this case, or

---

[25] (Citations and punctuation omitted.) *Gonzalez v. State*, 310 Ga. App. 348, 349-350 (1) (714 SE2d 13) (2011).

[26] *Dickens v. State*, 280 Ga. 320, 322 (2) (627 SE2d 587) (2006).

whether the juror shared this information with any other jurors. "Accordingly, [Whitfield] has not established a reasonable probability that the outcome of his trial would have been different but for his counsel's alleged deficiency."[27]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[27] *Gonzalez*, 310 Ga. App. at 350 (1) (rejecting claim of ineffective assistance of trial counsel where defendant did not demonstrate that the juror at issue spoke about her concerns in front of other jurors or that other jurors were aware of her concerns and the juror stated that she could follow the judge's instructions despite her concerns).